Thank you, Judge. I was discussing with Mr. Frank. We weren't sure who you wanted to go first since HUD had filed a motion for reconsideration. No, we usually re-argue. We re-argue. I mean, in other words, Helen goes first. Thank you, Judge. And rather than going back through the argument, which I know the Court understood well, I wanted to launch right into answering the questions that you asked us to address. And the first question that the Court asked is, does alleging a violation of law to the government give rise categorically to a non-trivial interest in the complainant's identity? That's slightly garbled, of course. It means not non-trivial personal privacy interests. But I'm sure you figured that out. Sure. Okay. Under Exemption 6 of the FOIA. And the answer to that is no. And the reason is it depends on the circumstances. That is, routinely in my line of work, I file something with a court, a complaint or other documents, alleging that someone's violated the law. You can imagine Ralph Nader alleging, making that kind of allegation in an op-ed in the New York Times. So it depends on what the circumstances are. And this circles us back now to Landano. And in the Landano case, the Supreme Court rejected this kind of categorical rule that any individual who is involved in a law enforcement investigation necessarily expects confidentiality. Under the facts of this case, what's very significant to me is that both of these individuals, in their correspondence with HUD, expressly welcomed contact from HUD. They said, if you have any questions or concerns, if you want any additional information, feel free to contact me. And that's why they provided their contact information. Well, I don't know what that proves. They wanted contact with HUD, but maybe not exposure to the outside world. Exactly. But I think it shows the attenuated nature of the privacy interest here. That is, you know, these individuals didn't want to be private in the sense of their interaction with the government. And I realize that's a different issue, you know, compared to whether they wanted other people to know. But I think it goes to show that the expectation of confidentiality depends on the facts and circumstances of a case. And when I say facts and circumstances, I'm not calling, as I think HUD, you know, represented the effect of this Court's order to be, I'm not calling on calling for a very detailed factual account as to what each complainant's situation is, but rather the sort of categorical logic that the Supreme Court employed in Londano. And it said courts can use common-sense assumptions about types of crimes and the relationship of an individual to a crime to determine. In this instance, we know absolutely nothing about how these people were situated, or do we? Do we know anything about how the complainants were situated to the circumstances of the case? We don't. And that's the government's problem, in my view, because they're the ones who have the burden of proof of establishing exemptions, rather than putting forth doing any investigation. If you follow that logic, you'll see that my problem with that is, I mean, this has to be done on an individual case-by-case basis then, right? No, absolutely not. What I'm calling on the rule to be is similar to the rule in Londano. That is, you need information about the nature of the investigation, as well as the relationship of the complainant to the investigation. So it does have to be done on an individual basis. What you originally held was that we need to – there needs to be some indication of how this person is situated. Exactly. That's not an individual case-by-case basis? No. You can use a categorical logic like the Supreme Court did. I thought what they rejected in Londano was a categorical – I mean, I guess there are small categories and big categories, but – Well, what they rejected in Londano was a sweeping, fact-free presumption that would apply in every case. Right. So we need some facts, which is what Judge Tshishima is saying. You need some facts. Exactly. And I think that's exactly what the Court's previous order held, is we need some information about how these individuals are situated, because without that kind of information, we have no way of evaluating, one, if there's any non-trivial privacy interests, and second, if there's any reasonable probability that there's going to be some retaliation or other invasion of privacy from unlawful contact. But what – I mean, another way to look at all this would be to say, while there's a non-trivial privacy interest, let's go to the bouncing. Now, you've never come forward with any public interest. Have you had an opportunity to, or you don't want to, or you would if asked, or what? I think we have come forward with a public policy interest. I think you and Judge Mulway down below didn't find it to be particularly weighty. Our argument has always been, and this follows the Electronic Frontier Foundation case, our argument has always been that it would be a good thing for the public to know how investigations are being initiated. Very costly to the government and the parties involved. It takes up a lot of resources. And so, for example, once the identity of these complainants is disclosed and we find out, okay, these individuals are competitors of my client and we're using the investigative process as a competitive tool, that's something that we would like to go back to HUD or our congressmen or a senator or any other individual to say, you know, HUD's resources are being misapplied here because the complaints are not coming in from consumers who are harmed by respite or overcharge. Excuse me. This is Judge Fletcher. I've got a broad question that you're in the process of answering, which is why are you so interested in finding out who these people are? And you're partly answering it by saying, well, if we find out that it's a business competitor, we can then write to our congressmen or do something else showing that HUD is wasting its resources. Well, if it's from a business competitor, I don't see that it follows that HUD is wasting its resources to investigate the truth of what they're alleging. Sure, and I understand. And I'm not saying that whoever we direct that to would necessarily accept that argument, but I think we're entitled to try to make that argument. I mean, you personally may not find it particularly persuasive, but at least give us the factual tools so that we could make the best case possible in terms of influencing HUD. You know, it's pretty clear from both the 2003 letter and from the 2008 email, it's made explicit in the 2008 email that the writer or writers, it could be the same person, I guess, twice, wants to be confidential with respect to the outer world. It's explicit in 2008. I think it's implicit in 2003. And the reason why someone might wish to remain anonymous to the outside world, I think is fairly obvious that there may be adverse consequences that flow. What precisely those adverse consequences are, we are left to guess. But given the vigor with which you're pursuing this, it may very well be that they fear some form of adverse action against them from you. A lawsuit, boycott, who knows. So I'm not sure I need to know anything more than what is apparent and inferable from the existence of these two documents, the 2003 letter and the 2008 email, that they've got some privacy interest. How would you respond to that? Yeah, I think the 2008 writer did request confidentiality. I think then the issue in terms of what the privacy interest is, you know, was that a reasonable expectation? I think when we look at privacy cases, we always look for it. Well, no, I'm sorry. The exemption doesn't look at the expectation, it looks to interest. But you have an interest in privacy, you know, that's recognized by the court, generally speaking. If it's not idiosyncratic, you know, individuals may have idiosyncratic notions about privacy. That's not what a court in doing a FOIA analysis would do. It would be sort of reasonable, you know, accepted within our tradition and our current society. What do people reasonably expect? And it's difficult to define privacy solely by a person's subjective wishes or expectations. So I think that'll answer your question. I don't know if there's any illuminating Fourth Amendment law, but the privacy interest that's being claimed here is a claim to be able to go to the government, and so not to stay private in that instance, but to have your relationship with the government be private. And is there any law outside the FOIA world that is illuminating as to that kind of a claim? Yes. And I hate to sound like a broken record, but I want to circle back to Londano, because I think it was a similar issue, because what they were trying to do in Londano was interpret the term confidential, as what is a confidential communication or what's a confidential informant or confidential communication by an informant. And to determine whether a particular communication was confidential and to back up a step, it was really exactly the same issue. It's, well, you know, the person seeking the information said, well, of course it can't be confidential because you told the government, and you never know what the government's going to do with that. And the Court rejected that. I mean, that's certainly an extreme position and said, you know, information can be confidential if it's intended to be of limited distribution. And so we can't just presume that every contact with an agency in a law enforcement context is confidential. You need some circumstances, even categorical ones. I'm going to interrupt you to ask you to address two other parts of our previous opinion. One is that this problem of how we said things like substantial probability that the disclosure will lead to invasion of privacy. In other words, if you have some sense of what an invasion of privacy is, were we right or wrong or contrary to case law in articulating the way in which one demonstrates that there will be an invasion of privacy, which is a little different than identifying the nature of the invasion of privacy. That's question one. I'll lay out both questions so you can do them both. And the second one is whether there is some way in which the assumption in this opinion was that there may be instances in which if the person who filed the complaint was a business competitor or had business interests that that might not be a non-trivial privacy interest. So the question is were those things wrong or do you support them and how? Why? With respect to the standard of proof, I think the substantial probability test that the Court developed is absolutely dead on the money. I think the analysis looking at the plain language of Exemption 6, which calls for the exemption only applies when there would be an unwarranted invasion of personal privacy. Well, it may be right. The real question is it appears that the case law has gotten away from the language of the statute. The question is has it gotten so far away that the substantial probability is wrong and it's something more like a realistic possibility or something like that in terms of what the cases say. Sure. And, well, I think we know, you know, in terms of what the Supreme Court has articulated in Rose, it has to be more than a possibility, more than a mere possibility. And so I think substantial possibility is very consistent with that language. That's obviously true. You just changed the word from probability to possibility. Do you want to accept possibility? No. Probability, obviously, is what we like. And, again, you know, the word we're focused on is would. So I agreed with, you know, the Court's analysis of that. I think I continue to disagree with the application in this particular case because I think the likelihood of retaliation, et cetera, is still purely hypothetical and conjectural. But I did want to move on to the AT&T case. And that's an interesting case that wasn't out when we argued this before. Could I interrupt you for a moment? You've not quite addressed the second part of Judge Berzon's question, and that is what's the nature of the privacy interest, at least as I understood her question? For example, does a business competitor have a privacy interest compared to a sort of a do-gooder citizen who has no business competitive relationship with you? Do those both have privacy interests? Are the privacy interests different in quantity, quality? Yeah, that's the question I was just about to address, Judge. Oh, I'm sorry. And it's not – and what we're not – we're not looking at the definition of privacy.  Personal privacy. Right. And so in the AT&T case, there's a very well, you know, I thought, reasoned and written passage of that case where Justice Roberts said, well, in common parlance, we always contrast personal with business. And he gave many examples of that as part of the analysis for why a corporation doesn't have a right to privacy. That case is, you know, potentially applicable here to the extent that if these complainants were, you know, say that Exemption 6 doesn't apply, but we just don't know one way or the other whether that's the case. But it's clearly the case, and the Court, I think, went in the right direction with this in the earlier opinion, that there is an attenuated privacy interest when you're talking about a business relationship. And I think the AT&T case very much bears that out, and I think the cases are moving in that direction. You know, the FOIA, the language is personal privacy. It isn't simply privacy. That concept of personal needs to carry some weight. And I think the way to make that phrase carry weight is exactly as the Court did in its previous opinion, which is to say that privacy interests are attenuated when we're not dealing with an individual and we're not dealing with sensitive type of information, but we are dealing with something that's occurring in a business context. I think very clearly here, if you look at the face of the 2003 and the 2008 communications, these are individuals who are in the industry. I think that's a very clear distinction. Well, we don't know who they are. I mean, problem one is we don't know who they are. And maybe you're not entitled to know who they are, but maybe it could be done in Cameron, not who they are, but some sense of their connection to the situation. Exactly, Judge. And I think that the Court's earlier opinion, you know, struck a good balance there, and I think it was consistent with Landano and the rejection of, you know, I think HUD is arguing for essentially a rule that individuals who are involved with investigations never get their identities disclosed or something like a whistleblower exception to FOIA. Well, they're not, though, because I guess they're arguing that they always have a non-trivial privacy interest, but that may be overcome in the balance. That's what I understand their argument to be. I understand it a little differently. I think their argument is there's never really any public interest in knowing the identities of individuals involved in investigations as long as you have access to the investigative file. On their theory, you'd always lose the balancing as well. Sure. And then if you accept that approach, you are not really balancing. You are creating a whistleblower exception to FOIA, or you are now in, you know, Exemption 7 and not Exemption 6, and you've sort of muddied the waters because you're talking about law enforcement and the institutional interests of the agency as opposed to really the heart of what gets at privacy and specifically personal privacy, which is what Exemption 6 was attempting to protect. Okay. You're out of time. We will give you a minute or so in rebuttal. Thank you. Thank you. Thank you. May it please the Court, Steve Frank from the Justice Department of the government appreciates the opportunity to re-argue this case because the government sought re-hearing because the Solicitor General was very concerned precisely about what Judge Toshima brought up, was concerned that if this Court followed what it said in its previous opinion and other courts followed it, there would be constant remands in what is really routine FOIA cases. And that's what this is. This is a very routine case. Well, I mean, I looked over all the cases that you cited. And all of the cases that you cited, as far as I could tell, there was some way to figure out how the person in question was situated with regard to the information that they had provided. There was some, here we have a complete blank. So it seems to me that you're arguing for a complete blank. You are arguing for a categorical approach that says that whenever somebody gives information to the government for law enforcement purposes, they have a privacy interest that is entitled to be at least taken into account and then trigger a balance. And, of course, how do you balance, again, if you don't know anything about them? Because we know nothing about the relationship of these people to the information that they provided. And I don't think that's true in any of the other cases. Well, I would suggest that all the government is asking this Court to do is precisely what it did in Yonemato, which was a case that was argued the same day as this case was. It was argued, I think, just a couple of cases before that. And we remanded a lot of that case. You recall that case. And in that case, the Court said, and I think quite correctly, that insofar as the district court made a categorical privacy judgment, it erred. Such categorical determinations are rarely proper under the FOIA. And the government is not here making a categorical argument. But in Yonemato, we went through each piece, each email. We knew who was involved. And we went through each email. And we determined where we could do it on the existing information and where we needed more information. And it's hard for me to understand what you got so freaked out about in this case, because if you look at the situation, there was absolutely no indication of how these people were related. We said you could do it in camera. We could say more firmly that you could do it in camera. We could straighten out a little of the language about whether it's substantial probability or substantial possibility. Beyond that, what was wrong with the opinion? What was wrong with the opinion is that it doesn't matter who these people are and how they are situated. In quite the contrary, Your Honor, in just about every other case that I'm aware of, and this is pretty much what I do, Exemption 6, the courts really did not know who the – how the people were situated. Let's just take – let's just – let's take Lahr. I argued Lahr before Your Honor. And Your Honor said that the eyewitnesses – We knew how they were situated. Those people were the witnesses to the crime. They were in a certain place at a certain time. They were not people who had come forward themselves. And so we knew something about how they got into this – why they were – they were related to the case. We knew that they witnessed – all we knew about them is that they witnessed a near disaster. And we knew that – right. And we knew that they had not come forward themselves. That's all – that's all we knew. Well, that's something. Here we know nothing other than that they came forward. What we knew is that they were eyewitness, okay, who had not come forward. That's it. In this case, we know that these are whistleblowers who have come forward to the government and alleged the crime. A whistleblower because they filed a complaint? Because they filed a complaint. And that's a whistleblower. What I'm saying to you is that there's not much difference. Let's say that Your Honor had taken the same approach in Lahr that it took in this case. Well, I think the Court, if it took that approach, and that's, again, why the Solicitor General sought rehearing, we were concerned that you would take that approach. If you did, in Lahr, you might say, we don't know anything about these eyewitnesses. We don't know who they are. Some of them could have been competitors to TWA. But we know why they had the information that was being sought. But who are they? What were their biases? Did they have a business reason for testifying? Sir, just a minute. Thank you. We know – so let's put it another way.   We know that the Solicitor General has a business reason for filing a complaint. Why are you not arguing then for a categorical rule that anybody who files a piece of paper with the government complaining about something as entitled has a privacy interest in that? I want to make clear that I did not say it was categorical. There may be instances in which there is not a privacy interest, and there may be instances in which the public interest outweighs whatever privacy interest there is. Everybody here agrees that there is no public interest in this case. And I think that colors it. I'm not sure that's true. Well, the district court agreed. Your Honor said in the opinion it was very skeptical. Judge Fletcher, I think, pointed out that it doesn't make any difference who the person is and whether the person is a business competitor. You don't need to know their name in order for the public interest. Suppose, for example – I mean, when you have, you know, just two people on one complaint, it's a little hard to see the public interest. But suppose you had – they were asking for every complaint that had been filed in the last five years and which ones were investigated and which ones weren't, and how the people who had – whether the people who were investigated had some characteristic different than the people who weren't investigated. Would that be in the public interest? Well, they can ask. They can ask for all the complaints and – that were made and whether – how they were investigated and how they weren't. Our point is that the name of the person who made the complaint is totally irrelevant to whether or not HUD conducts an investigation. HUD conducts an investigation regardless of who the person is. Let me ask you this, if I might. It's pretty clear that we don't know who these people are or who this person is. Let me hypothesize for purposes of my question who they are. Let's assume that the person is the owner and chief executive officer of a business competitor. Also, as a different assumption, let's assume that it is a low-level employee of Prudential. Now, do they have the same privacy interest in keeping their name concealed? Yes, and that was another problem that we had with the court's opinion. Why is that? I have to say that my instinct is that if it's the president and owner of another company that's in direct competition, the privacy interest doesn't seem to me on quite the same nature as a low-level employee who's just trying to further the public good because maybe they're offended by what they see as law-breaking. Judge Fletcher, again, this goes to leading down the road to trying every case to determine who the person is and what they are. Look – Excuse me, I understand it's hard back and forth with the microphone, but yes, that is leading down that path, and I want you to tell me why we shouldn't go down that path by, for example, telling me why these people are so similarly situated that their privacy interests are, for all practical purposes, identical. Well, because the Supreme Court has told us what a non-de minimis privacy interest is, and that's what we're to follow. The Supreme Court and Reporters Committee said privacy encompasses the individual's control of information concerning his or her person, and either of those two people would have the same interest in controlling information about themselves. That's what privacy is. First of all, I want to go back to the categorical question. Every time – you say on the one hand you're not making a categorical argument, you're not saying that there's a non-trivial privacy interest. On the other hand, you're saying that there is absolutely no requirement that there be – that if the person is filing – I understand you'd be saying that if what we know about the person is that they filed a complaint with the government about a law enforcement question, that is all we're entitled to know. So we're never going to know more than that, so we're never going to be able to find out if there's a non-trivial privacy interest. So you're making a categorical argument. If you could at least tell me why you're not making a non-categorical argument, that every whistleblower – not even whistleblowers, we don't even know if they're whistleblowers. Whistleblowers usually mean somebody who's trying to bring information for the public good rather than for their own good. But everybody who files a complaint with the government about a possible legal violation is – name cannot be revealed. Now, why are you not making that argument, if you're not making that argument? I find it not to be particularly helpful to use words that are inflammatory and controversial like categorical. Your Honor said quite correctly that courts frown upon the use of the categorical. I'm not making that argument. Now, there may be instances – I'll give you an example. There may be instances in which it's not categorical. For example, what if these names had already been disclosed in court proceedings or in the newspaper? They wouldn't categorically be – they would not be a categorical non-privacy interest in that case. So you're – but you are arguing. All right. Without using any terms, you are arguing – just a minute. You are arguing that in every instance in which a citizen files a complaint with the government about a possible law violation, they have a non-trivial privacy interest. Unless there's – if it's not generally known that they've done that. I'm saying that generally that is the case. And, you know, I don't know what's so extraordinary about that because – because I'm not saying that there's a non-trivial privacy interest. I'm saying that there's a non-trivial privacy interest. And let's look at some of the cases – let's look at all of the cases where the courts have found there to be – all we're looking for here, we're not looking for an enormous privacy interest. We're just talking about a non-trivial privacy interest. Kagan. Then why does it – then why do we have separately have Section 70, which has a requirement that there be a guarantee of – or some assurance of confidentiality before there is any protection? I mean, it – why would Congress on the one hand say that and the other hand let you, under this separate provision, avoid any concern about whether there had been any confidentiality assurance and protect the information entirely? Your Honor, I was at a loss then and I am today. Why 70 is in this case. Well, it's because there are two separate FOIA exemptions, they have different requirements, and they protect different things. For example, if we could have argued 7D in this case, we might have done so. But in order to do that, you have to prove, A, that it's a law enforcement file, which might be questionable here, and, B, that there was a reasonable expectation of confidentiality, which also might have been problematic here. And therefore, you have – you're arguing around those two requirements. The first one doesn't seem to be problematical. By taking the same approach under a different provision, which – without those requisites. But we want a great risk because Exemption 6 is not as strong an exemption as 7D. If you meet those requirements in 7D, you're covered. It's exempt, period. In Exemption 6, there's a balancing test. Even if you meet the requirements of showing a non-minimal privacy interest, it can still be outweighed by the public interest. So we wouldn't want to go the Exemption 6 route. And without knowing anything about how the people are categorized, are related to the situation, how could we possibly apply a balancing test? The same way that the Court did in all the names and addresses cases. All the names and addresses cases, DOD versus FLRB, the courts assumed that people would get a barrage of junk mail. There wasn't an evidentiary hearing to determine whether they would get a junk mail. There wasn't a hearing to determine whether the requester was going to send out junk mail to everybody or only to certain demographics. There wasn't an evidentiary hearing to determine whether the people wanted junk mail. The courts assumed that people would get a barrage of junk mail. Some people don't get very much mail, like myself, and welcome some mail in there. But every single name and address case which involves a possibility of solicitation of mail, the courts would tell that raises a non-trivial privacy interest. And I think what concerns me about this case is that here, at least to me and to the   And I think it's a good thing to try and see whether that even rises to the level of a non-trivial privacy interest, when the Court told every day that the possibility of getting junk mail is a non-trivial privacy interest. Look at the other cases where the Court – look at Yarnmatov. I'm asking nothing more, nothing more radical than what the Court did with e-mail number 10. And I would ask the Court to look again at e-mail number 10, which was an e-mail where an employee was airing complaints about another employee she worked with. All right. We know something about those people that we don't know about this one, i.e. they were employees. That's right. All right. We don't know that here. And the Court, just based on that alone, based on that alone, said that there was a non-trivial privacy interest. The Court did not look to see what their motive was. Was the person a competitor for a job opening? Did the person have a business reason for complaining about the other employee? What I find hard to understand here is the Court, in the first case, seemed to be kind of going out of its way. We're all speculating here. Going out of its way to speculate that these are, like, not good people, that these are competitors or business people or what have you. When we could just as easily speculate that this is perhaps that these are good people, this may be a reporter. Excuse me. Wasn't the point of that opinion, and I'd still like to know what's wrong with it, that we shouldn't be speculating, that in some manner, without a major inquiry and without getting into motives, we need to know something about how they are situated with regard to the case so we're not speculating? This is not the case. In all of the cases where there have been remands, and I would ask the Court to review its opinion, in the Court's opinion, it said that we need to remand for more information. And it said we need to remand to determine the likelihood. And then it cited Viduccia and Weiner. In neither of those cases, and in no other case that I am aware of, did the Court remand to determine the question of likelihood. The Court remanded in Viduccia and in Weiner because it couldn't even tell from the Vaughan indexes or the affidavit what was at stake, whether it was names or a location or a picture or anything. The only time the Court said, I'm aware of remand, is when they can't even tell what is being redacted. And we don't have that problem here. It's in that case. Do you want to comment on the AT&T case and the broader question of business versus personal interest? Yes, Your Honor. Again, I don't really see the relevance of the AT&T case. It was a very limited case. It was a statutory construction case of whether or not a corporation has a personal privacy interest under FOIA. And the Court said, no, a corporation doesn't. It didn't go on to say, which is where I think this Court is going, and I think it's a stretch. We're not going anywhere. That's why we're rehearing, because we want to hear what you have to say and we're thinking about it. But, yeah, it in no way suggested that a person who has a personal privacy interest that may in some way have some kind of business motive or something like that is in the same position as a corporation. That's where this Court wants to go. And quite honestly, I don't know any case, any case that is so held in the FOIA jurisprudence. These are people. Whether or not they're the president of some company or are not, they are writing in as individuals, as people, FOIA people on their personal privacy. And that is clear from the face of the document. Unless ---- Suppose it's sent in corporate letterhead. I beg your pardon? Suppose it's sent in corporate letterhead and signed so-and-so CEO. Well, again, unless it was ---- I hear where Your Honor is coming from. If it was the corporation itself, if it said up at the top, ex-corporation and it was signed, you know, president, CEO, if it was a corporation as opposed to an individual who was acting, you might have something ---- we might have a problem here. That's not the case. How do we know that? It's apparent on the face of the documents, which we submitted in camera to the district court, and we're more than happy to do that to this Court should it so request. And it would see that we are dealing with individuals here. I just have to come back to, I think, the question ---- I know we in the law get very caught up a lot. I think our time is way up with tests and standards and this and that. The courts use their common sense in these kind of cases. They say, yeah, you're going to get a lot of solicitations, or, yes, it's going to lead to some kind of invasion of privacy. And I think Judge Fletcher hit the nail on the head when he said, why are these people spending so much money to find out the names of these people? Unless there's some desire for some retaliation, harassment, or just to get their names out there and say you can't get away with this without being exposed. And I think the Court, just using its common sense, can answer both sides of the question, that there is a non-de minimis private interest and that it's likely to lead to an invasion of privacy. Obviously, in deciding this case, we're not ---- we have to come up with principles that don't only relate to this case. And you are asking us to come up with principles that don't only relate to this case by arguing, I'm going to say the dirty word again, categorically, that anybody who files a complaint with the government for law enforcement purposes has a non-trivial privacy interest. So that's either true or it isn't true. And it would be true even in an instance in which there was a more apparent reason why they might want the information. Well, I will say it ---- I'll put it this way. It is categorical in the same sense that people who don't want their names and addresses exposed have a categorical non-privacy interest. It's categorical in the same sense that in Nennis, this Court held that people who apply for rafting permits on the Oregon River have a non-trivial privacy interest. It's categorical in the sense of the Yamamoto e-mail number 10. All one has to know in those cases is that there are people who might get too much e-mail or too much junk mail. There are people who might get solicited by marketers. Or there are people who might be harassed or intimidated or embarrassed because they are whistleblowers. Okay. You have used up a great deal of time. I appreciate the extra time. We have used up a great deal of your time, so thank you very much. We'll give you three minutes to rebuttal since you want six minutes over. Go ahead. Thank you. I wanted to address the question about what if it's a CEO of a corporation writing. And that's a possibility. Mr. Frank indicated that the letters had been submitted in camera for the district court's review. That's not my recollection at all. The record will speak for itself. I handled the case in the district court. And if it was ever so submitted, that's completely news to me. I never became aware of that. But, you know, that's a possibility. And it shows the problems with adopting this sort of categorical fact-free approach. That's how we describe it in the brief. It's fact-free. We don't know anything about it. Related to that, I'll say, okay, if these letters identify a business entity, a corporation, an LLC, a partnership, we're entitled to know that. That's very clear under AT&T. There's no personal privacy protection at all. Let's go back to personal privacy. Again, Congress opposed this case. Now, I assume we can handle that problem fairly quickly if there has not already been an in-camera submission. It's fairly easy to do that. Let's assume that we have an in-camera submission. Whether we do or not, I don't know. And the district judge has said, no, this is not submitted by a CEO on behalf of the company. Then what? Then I think, again, it's not a matter of personal privacy. If it's something that is based on additional information that may be deduced, if it's something that's occurring in a business context, and I think the court, you know, cited a couple of cases to that effect, and it's just a common-sense intuition that the word personal has to mean something. And that's why we need a little bit more information. And, you know, before I close, I want to stress that the absence of information here is, as a requester, is not my problem. It's the HUD's problem because they have the burden of proving that an exemption applies. The exemptions are construed narrowly and exclusively. And due to the language of Exemption 6, doubts should be resolved in favor of disclosure. Those are three key axioms of Exemption 6 law, and the court recited them, you know, right at the very beginning of the opinion, so I know that the court is familiar with those precepts. In closing, this case has always appeared to me to be somewhat of a round peg in a square hole. I think, you know, in the sense that really what HUD is interested in is law enforcement issues. It has very little to do with personal privacy. So we run the risk, as I've briefed and I know Mr. Frank disputes, of creating tension with Londano. So one way to resolve that, I think, which is very much in tune with the court's approach anyway, is to, as the Supreme Court did in Londano, said, you can use a sort of a logic without knowing the exact facts of every case, but you need at least some facts. In Londano, it was what's the kind of crime and what is the relationship of the individual with that crime? And I think the court's opinion basically, you know, it ended up at that exact same spot because it said, okay, given that this is a regulatory violation, a HUD violation, and it involves a particular industry, the real estate industry, you know, we need to know where these complaints are situated with respect to that industry and with respect to the complaint and with respect to our client. So, you know, you end up where I think Londano ends up, which is a good place to end up because we don't want to do a disservice to Exemption 6 by trying to shoehorn, you know, law enforcement concerns into Exemption 6. But thank you very much. Thank you very much. Thank both of you for your arguments. I have one second to correct what might have been a mistake. I might have misspoke when I said that the letters were submitted in camera. In reading the district court's opinion, he quoted from them at length, such length that it seemed to me that he had seen them, but he might have just been referring to our affidavit. So I stand corrected. I'm not 100 percent sure whether they were submitted, but we are prepared to submit them to this court either to hand them over or to submit them formally. Well, of course, that's all the opinion ever said to do anyway, which is so maybe we ought to go and say we're finished. I mean, that was what the opinion said. It said, you know, you can do it in camera, but you have to do it. With the court, when I get back to D.C. with the court. All right. Well, we will deal with that now that you say that you're willing to do it. Yes, ma'am. Okay. Thank you. All rise.
judges: Tashima, Fletcher, Berzon